# In the United States Court of Federal Claims

No. 08-1981
No. 07-4262
(Filed: July 28, 2014)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * | * | |
| **NATHAN and DEBORAH** | * | |
| **CHILDERS, et al.,** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Motion for Reconsideration; Rule 59(a)(1); Fifth Amendment Taking; National Trails System Act, 16 U.S.C. § 1241 et seq.; Severance Damages; Loss of Access; Sufficient Support for Expert Opinion; Proper Scope of Expert Opinion; Fed. R. Evid. 702; Post-Trial Admission of Deposition; Fed. R. Civ. P. 32. |
| **THE UNITED STATES,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * | * | |
| * * * * * * * * * * * * * * * * * * * * * * | * | |
| **CALUSA LAKES COMMUNITY** | * | |
| **ASSOCIATION, et al.,** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * | * | |

Mark F. (Thor) Hearne, II, Lindsay S.C. Brinton, and Meghan S. Largent, Arent Fox LLP, 112 S. Hanley Road, Suite 200, Clayton, MO 63105; Debra J. Albin-Riley, Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013, for Plaintiffs.

Robert G. Dreher and Kristine S. Tardiff, United States Department of Justice, Environment & Natural Resources Division, Natural Resources Section, 53 Pleasant Street, 4th Floor, Concord, NH 03301, for Defendant. Carol L. Draper, Lary C. Larson, and Charlotte M. Youngblood, United States Department of Justice, Environment & Natural Resources Division, Natural Resources Section, 601 D Street, N.W., Room 3131, Washington, D.C. 20044, Of Counsel.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION**

**WILLIAMS, Judge.**

This matter comes before the Court on Plaintiffs' "motion under Rule 59 to reconsider and amend opinion and order." In this Fifth Amendment taking(s) case, the Court awarded Plaintiffs compensation in the amount of $5,751,579.73 stemming from the imposition of a recreational trail across their properties pursuant to the Rails-to-Trails Act.

On reconsideration, Plaintiffs seek an additional award of $1,400,000 - $900,000 in severance damages to Palmer Ranch Holdings, Ltd. ("Palmer Ranch") for lost access to McIntosh Road and $500,000 to JMC-Real Estate Holdings, LLC ("JMC") for lost access to the Mission Valley Golf and Country Club ("Mission Valley").

To prevail on a motion to reconsider or amend the judgment, Plaintiffs must show extraordinary circumstances that justify the relief sought, as reconsidering or amending a judgment after its entry should be done sparingly. See Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru–Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)), reh'g en banc denied (Fed. Cir. 2005), cert. denied, 546 U.S. 826 (2005). To show extraordinary circumstances, a litigant must establish a manifest error of law or mistake of fact. Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999) (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)), aff'd, 250 F.3d 762 (Fed. Cir. 2000) (per curiam). To demonstrate a manifest error of law or fact, Plaintiffs must show "(1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citation omitted). "Manifest" injustice means "clearly apparent or obvious" and "refers to injustice that is apparent to the point of almost being indisputable." Martin v. United States, 103 Fed. Cl. 445, 448 (2012) (citations and quotation marks omitted).

**Palmer Ranch**

On reconsideration, Plaintiffs ask the Court to award Palmer Ranch an additional $900,000 in severance damages for lost access to McIntosh Road. At the time of the taking, Palmer Ranch did not have direct access to McIntosh Road. In denying these lost access damages the Court reasoned:

> It is well settled that a takings plaintiff can recover damages when the taking causes access to the remainder to be diminished. . . . However, in this case, Plaintiffs seek compensation for unspecified western access to and from Palmer Ranch that had not been constructed or planned. In order to recover damages for

a potential future use, a takings plaintiff must establish that the potential future use was reasonably probable on the date of valuation. [Bd. of Cnty. Supervisors], 276 F.3d 1359 (Fed. Cir. 2002). Plaintiffs failed to meet their burden here. At the outset, the specifics of how this access via an easement relocation was to occur remain fuzzy. The only evidence Plaintiffs adduced on the probability of access in the before condition was the conclusory opinion of Mr. [Chad] Durrance without an adequate factual predicate. This expert testified in response to a leading question that County approval would have to be given for the easement relocation and could be secured. Tr. 353. But the expert's only support for this conclusion was his testimony that he had contacted WilsonMiller, and some unidentified employee told him so. Plaintiffs' other expert who had worked for Sarasota County and currently works for WilsonMiller was silent on this point.

In McCann Holdings, Ltd. v. United States, this Court articulated the type of evidence required to demonstrate that future access would have been reasonably probable in the before condition, stating:

> Here, Plaintiff has marshaled sufficient evidence to establish there was a reasonable probability that Sarasota County would have used its dedicated rights-of-way to extend Bay and Preymore Streets, which would have afforded access to McCann North at those two locations. Plaintiff proffered plats showing the County had dedicated rights-of-way and would not need to condemn private property to extend either street. PX 18, PX 19. Mr. Culverhouse credibly testified that based on his discussions with the county, he believed the county would have extended Bay and/or Preymore Streets . . . .

McCann Holdings, 2013 WL 3326646, at *25. Here, in contrast, there was no factual testimony on the likelihood of the County's approval, and an inadequate description of what exactly access in the before condition would have been. Moreover, as Defendant points out, the land through which access would have to pass is designated as a wildlife corridor, raising a question as to the likelihood of Sarasota County permitting road construction to provide such access. Nor did Plaintiffs present evidence that similar access had been provided in similar situations. See Bd. of Cnty. Supervisors, 276 F.3d at 1365-66.

Childers v. United States, No. 08-1981, slip op. at 89-90 (Fed. Cl. Apr. 2, 2014). The Court further recognized that while Plaintiffs acknowledged that the land between southwestern Palmer Ranch and McIntosh Road was owned by Prestancia, there was no evidence of Prestancia's position on the probability of the easement relocation referenced by Mr. Durrance. Id. at 87, 89.

In seeking reconsideration, Plaintiffs contend the Court erred in concluding that the only evidence Plaintiffs adduced on the probability of access in the before condition was the conclusory opinion of Mr. Durrance without an adequate factual predicate. Plaintiffs argue that the Court ignored the January 6, 2012 report of Stantec WilsonMiller ("WilsonMiller"), a consulting firm retained by Plaintiffs that provides services in planning, engineering, architecture, surveying, and project management, and the testimony of James Paulmann.

Plaintiffs argue that Mr. Durrance's appraisal and testimony, the WilsonMiller report, and Mr. Paulmann's testimony established it was reasonably probable that Palmer Ranch could have had access to McIntosh Road in the before condition.

In order to prevail, Plaintiffs must establish both that at the time of the taking the land could have been "readily converted" to afford such access and that there was a need or demand for such use in the reasonably near future. <u>United States ex rel. TVA v. Powelson</u>, 319 U.S. 266, 275 (1943) (citations omitted); <u>Bd. of Cnty. Supervisors v. United States</u>, 276 F.3d 1359, 1366 (Fed. Cir. 2002) (citation omitted).

Mr. Durrance's appraisal of Palmer Ranch addressed the issue of access from Palmer Ranch to McIntosh Road as follows:

> <u>Consultation with the primary planning/engineering firm for the Palmer Ranch DRI, Stantec (f/k/a [WilsonMiller]), indicates that before imposition of the new easement, access to McIntosh Road was reasonably probable.</u>  McIntosh Road, along with Honore Avenue, is one of the primary north-south connectors through the Palmer Ranch Community.  Although there is an intervening ownership between [southwestern Palmer Ranch] and McIntosh Road, <u>given the particulars of [Prestancia's] ownership, access/entry from McIntosh Road was not only probable, but the most desired access point of the available options.</u>  Access via other connections, while adequate, would not be the preferred access points.

PX 19B (BB-PLTF-12814) (emphasis added).  Mr. Durrance failed to identify in his report the person(s) with whom he consulted at WilsonMiller to reach his conclusions.  Nor did Mr. Durrance explain the "particulars" of Prestancia's "intervening ownership" that could have made "access/entry" from McIntosh Road probable, or how permission for such access could have been secured from Prestencia.

At trial, Mr. Durrance testified:

> Q [H]ow is it that . . . [Palmer Ranch could have had] access to McIntosh road when there's a 50-foot strip of land between this property and McIntosh Road that's actually owned by TPC Prestancia?

> A . . . It's reasonably probable in the before condition with TPC having ownership of the 50-foot strip of land and Palmer Ranch abutting that and then McIntosh Road.  In the before condition, McIntosh Road is a road easement, and TPC owns the lands underneath McIntosh Road in this area because it's an easement.  McIntosh Road is currently two lanes, but it's planned for four lanes, and there is [a] right-of-way easement reserved for the eventual widening of the four lanes.

> In the before condition, the build out of McIntosh Road, this strip of land on the east side of McIntosh Road, uses that strip for the eventual four laning of this, which releases this 50-foot strip over here that is currently reserved for the widening of McIntosh Road to four lanes, so is it reasonably probable given the situation, the particulars of this property that access to McIntosh Road could be achieved for the Palmer Ranch property? My answer is yes, and I consulted also

4

>   with [WilsonMiller] regarding that as well since they are the primary engineers and planners for this community.
>
>   Q And so your conclusion is based on the understanding that the road easement would be relocated from the west side of McIntosh Road on the TPC Prestancia property over to the east side of McIntosh Road on the east side of the currently-paved road, is that correct?
>
>   A Yes, that is.
>
>   Q And that would require the county to agree to that, would they not?
>
>   A Yes, sure.
>
>   Q Do you know if the county agrees to those kind of road easement relocations?
>
>   A Yes, they do. Again, I consulted with [WilsonMiller]. I didn't just operate in a vacuum and assume, and the answer is yes. Yes.

Tr. 351-53.

This was the extent of Mr. Durrance's testimony on Palmer Ranch's potential for access to McIntosh Road. While Mr. Durrance opined that access from Palmer Ranch to McIntosh Road was reasonably probable based on his understanding that the McIntosh Road easement could be relocated, he did not substantiate the basis for his understanding that such a relocation could have been accomplished. Tr. 353. Mr. Durrance likewise did not identify the "particulars" of the Prestancia ownership that caused him to opine that access to McIntosh Road from Palmer Ranch before the taking was reasonably probable. See Alost v. United States, 73 Fed. Cl. 480, 504-05 (2006) (finding expert testimony to be of little weight because it was based on a conclusory expert report that lacked independent analysis), aff'd sub nom. Morgan v. United States, 254 Fed. App'x 823 (Fed. Cir. 2007) (per curiam).

Plaintiffs introduced no testimony other than Mr. Durrance's regarding how Palmer Ranch could have sought to relocate the McIntosh Road easement on Prestancia from the west side of McIntosh Road to the east side or to effect the mechanics of this relocation. Nor did Plaintiffs submit any evidence on the specifics of how a two-lane highway easement could be relocated -- they did not provide either the dimensions of the expanse to be relocated or evidence as to why Prestancia could have likely agreed to such relocation. The owner of Prestancia, Tournament Players Club at Prestancia, Inc. is a plaintiff in this action. The Court awarded this plaintiff $772,794 as damages for this taking. Yet, Plaintiffs did not call the owner of Prestancia to testify on this aspect of their damages claim. By failing to articulate how the easement could have been relocated, Plaintiffs failed to demonstrate that at the time of the taking, the McIntosh Road easement could have been "readily converted" to a four-lane roadway affording access to Palmer Ranch.

Plaintiffs' contention here that nothing in the trial record contradicted Mr. Durrance's conclusion does not preclude this Court from assessing the persuasiveness of that expert opinion or from discounting it. Piscopo v. Sec'y of Health and Human Servs., 66 Fed. Cl. 49, 53 (2005)

5

(citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1997)) ("determinations as to the qualification of experts and the admissibility of their testimony, including an evaluation of whether the opinion is reliable and relevant, are generally within the discretion of a trial judge, and are reviewed for an abuse of discretion, only overturned if manifestly erroneous."); see generally Terran v. Sec'y of Health and Human Servs., 195 F.3d 1302, 1316 (Fed. Cir. 2000). The Court admitted Mr. Durrance as an expert in real estate appraisal, not in land use planning. Tr. 185.  As Mr. Durrance's reliance on his consultation with unidentified representatives from WilsonMiller indicates, the probability of Palmer Ranch achieving access to McIntosh Road in the before condition by widening this two-lane road to a four-lane road, relocating the road easement, and securing approval from the county and Prestancia were matters of land use planning.  Mr. Durrance testified that he consulted with WilsonMiller regarding the probability of access to McIntosh Road in the before condition "since they are the primary engineers and planners for this community."  Tr. 352.  An expert may only testify on matters within his expertise.  Fed. R. Evid. 702; Kumho, 526 U.S. at 141; Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001) ("[A] district court must . . . perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise").  Because Mr. Durrance's reference to his consultation is uncorroborated by testimony from anyone at WilsonMiller -- when two of the authors of the WilsonMiller reports testified on other matters -- the Court did not find WilsonMiller's opinion or Mr. Durrance's reliance on it to be persuasive.

Nor did the WilsonMiller reports provide a sufficient factual predicate for Mr. Durrance's conclusion that access to McIntosh Road was reasonably probable in the before condition.  The WilsonMiller reports are hearsay.  While this Court admits expert reports into evidence where both parties agree and waive their hearsay objections, this does not establish the reliability and validity of the opinions in the expert report.[1]  Two of the WilsonMiller employees who authored these reports, Crystal Allred and James Paulmann, testified but did not address the probability of the relocation of this easement.  Ms. Allred, an expert in long-range planning and zoning in Sarasota, Florida, did not have expertise on whether a roadway easement could have been relocated, and did not author the portions of the reports addressing access to McIntosh Road.  Tr. 762, 766, 857-58, 860-61.  Ms. Allred testified that Mr. Paulmann, with the assistance of WilsonMiller's Francisco Domingo, prepared the discussion in WilsonMiller's February 24, 2012 report regarding access from Palmer Ranch to McIntosh Road by means of an easement relocation on Prestancia.  Although Plaintiffs identified Mr. Paulmann as an expert land use planner, Mr. Paulmann was not qualified as an expert and did not testify on any aspect of the WilsonMiller reports.  Mr. Paulmann testified only as a lay witness regarding a wholly different topic -- the Palmer Ranch Development of Regional Impact.  Tr. 903.  Accordingly, because the WilsonMiller authors -- Plaintiffs' experts -- did not testify regarding the reasonable probability of access from McIntosh Road to Palmer Ranch, the Court accords no weight to the statements in the reports on this issue.  See Brace v. United States, 72 Fed. Cl. 337, 352 (2006) (recognizing that while "a testifying expert may rely upon 'facts or data' made known to the expert before the hearing and even may rely upon opinions, if reasonably relied upon by experts in the particular

---

[1] Typically, in this scenario, the Court permits the parties to use the expert report as a roadmap to facilitate the expert's direct testimony.  Here, there was no testimony by the author of the portion of the WilsonMillers report addressing this potential easement relocation.

field," "the *ipse dixit* of that reliance does not make those facts, data or opinions true, particularly where . . . they are derived largely from hearsay"), aff'd, 250 F. App'x 359 (Fed. Cir. 2007).

Alternatively, Plaintiffs request that the Court reopen the trial record under Rule 59(a)(2) and accept post hoc the deposition of Francisco Domingo, a senior project manager at WilsonMiller who authored portions of the January 6, 2012 and February 24, 2012 WilsonMiller reports regarding access and the easement relocation. Rule 59(a)(2) provides:

> ***Further Action After a Trial.*** The court may, on motion under this rule, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

According to Plaintiffs, Mr. Domingo's deposition is "additional evidence" that Palmer Ranch could have obtained access to McIntosh Road in the before condition. While Plaintiffs listed Mr. Domingo on their witness list as an expert transportation planner and engineer, they did not call Mr. Domingo to testify at trial. Because Defendant deposed Mr. Domingo, Plaintiffs contend that there would be "no hardship, unfairness or prejudice" to Defendant if the Court were to amend the trial record under Rule 59 to include Mr. Domingo's deposition, and amend its judgment based on this evidence. Plaintiffs do not cite any cases to support this proposition.

The litigation process rests on the assumption that both parties present their case once, to their best advantage, and allowing a party to revive claims on motions for reconsideration based on facts that could have been argued when the matter was ruled upon negates the role of advocacy in litigation. Keeton Corr., Inc. v. United States, 60 Fed. Cl. 251, 253 (2004) (quoting White Mountain Apache Tribe of Ariz. v. United States, 9 Cl. Ct. 32, 35 (1985)). Here, Defendant took Mr. Domingo's deposition one month before trial but neither party characterized the deposition as de bene esse or suggested it might be used at trial. Pls.' Mem. Mot. Recons. ("Pls.' Mem.") Exh. A. Nor did Plaintiffs seek to admit Mr. Domingo's deposition testimony into the record at trial.

As Defendant correctly argues, Mr. Domingo's deposition testimony would have been inadmissible at trial under Rule 32(a) and should not be admitted now after the record has closed. See Martinez v. United States, 101 Fed. Cl. 686, 688 (2012) (finding proffered depositions were inadmissible where there were no exceptional circumstances to justify their admission into the record). Plaintiffs cannot use a Rule 59 motion to bypass the dictates of Rule 32 and rely on Mr. Domingo's deposition to relitigate Palmer Ranch's lost access claim. Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1220 (5th Cir. 1986) (upholding district court's decision denying admission of evidence that was "readily available" at trial to amend the court's findings of fact and reverse judgment); Crawford v. Clarke, 578 F.3d 39, 44 (1st Cir. 2009) (affirming district court's decision to deny motion for reconsideration seeking to introduce evidence that "could have been advanced at trial"); Vasapolli v. Rostoff, 39 F.3d 27, 36 (1st Cir. 1994). As such, Mr. Domingo's deposition cannot be admitted into the record on reconsideration. Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citation omitted).

In sum, Plaintiffs failed to establish that there was reasonable probability of access from Palmer Ranch to McIntosh Road in the before condition.[2]

**JMC**

Plaintiffs ask the Court to award JMC an additional $500,000 in severance damages for its lost access to Mission Valley Golf and Country Club following the imposition of the Trails Act easement. The western 50-feet portion of the Legacy Trail runs the entire length of the eastern edge of JMC's 229.4185-acre property. PX 21B (BB-PLTF-13013).[3] The eastern 50-foot segment of the Legacy trail encumbers the land owned by Mission Valley. See PX 24B (BB-PLTF-11809). No private or public road connected JMC to Mission Valley before the taking.

Plaintiffs argue that before the taking, JMC abutted Mission Valley's golf course, wooded lands, and single-family homes to the east, and the owner of JMC enjoyed potential access to those abutting lands. After the taking, however, Plaintiffs state that because the eastern edge of JMC was encumbered by the trail corridor, it was no longer possible to "develop[] the JMC property in conjunction with the adjoining country club property." Pls.' Mem. 22

Plaintiffs submitted Mr. Durrance's appraisal and testimony to support this lost-access claim. When asked to explain why he attributed damages to JMC for lost access, Mr. Durrance testified:

> A: Well, for a couple of reasons. The potential for these owners or these properties, I should say, to connect, if so desired, that's number one, and there's been discussion in the past about potentially doing that. With the taking, the severing here, this public corridor? That's gone. Number 2, [JMC] abuts, I guess, a desirable land use for lack of a better term, having a golf course and extensive frontage or abutting ownership with it.

Tr. 369-70; see also Tr. 541-43.

In denying JMC damages for lost access to adjoining lands, the Court reasoned:

> Plaintiffs have not demonstrated entitlement to damages for lost access to adjoining lands. First, Plaintiffs have not established it was reasonably probable that they would have obtained access to Mission Valley Golf and Country Club

---

[2] While the Court remarked in the Opinion that there was a question as to the likelihood of Sarasota County permitting construction through the wildlife corridor on Palmer Ranch, the underpinning of the Court's decision denying Palmer Ranch lost access damages was the lack of evidence supporting Mr. Durrance's conclusory opinion on the probability of access in the before condition. As such, the Court does not reconsider this aspect of its decision.

[3] An aerial map of JMC is in Appendix 2 to this Opinion.

8

> from JMC before the taking when the rail corridor ran the entire length of the eastern edge of JMC, completely separating it from the country club. See PX 21C. No private or public roads connected JMC to the country club, and Plaintiffs did not present evidence that there was a plan or an agreement to build any roads. Plaintiffs have not demonstrated that the conversion of the railroad corridor to the Legacy Trail affected access between JMC and the adjoining properties at all. A plaintiff in a takings case cannot recover damages for lost potential access unless the plaintiff establishes that there was a reasonable probability that access would have been provided in the before taking scenario in the reasonably near future. United States ex rel. TVA v. Powelson, 319 U.S. 266, 275-76 (1943); see also Bd. of Cnty. Supervisors, 276 F.3d at 1365, 1368. Plaintiffs did not offer any evidence that JMC would have had access to Mission Valley Country Club but for the rail-trail corridor.

Childers, slip op. at 78. The Court also noted:

> Plaintiffs cite Mr. Dellos' testimony that Mission Valley lost western access because of the trail as evidence of JMC's decrease in property value because of lost access. Pls.' Post-Trial Br. 38. However, Mr. Dellos, the president of the Mission Valley Country Club, testified about how the trail affected the club's access -- not JMC's access.

Id. at n.47.

Plaintiffs ask the Court to reconsider awarding JMC lost access damages, claiming that the Court premised its finding on a conclusion "contrary" to the Court's opinion on appraisal methodology holding that "[b]y operation of federal law, the "before" condition of the property in this Trails Act taking was the unencumbered fee simples Plaintiffs would have enjoyed under the Honore deed absent the taking." Rogers v. United States, 101 Fed. Cl. 287, 296 (2011). Specifically, Plaintiffs contend that in the "'unencumbered fee simple' before-taken condition, JMC would have owned the land abutting [Mission Valley] free of any easement." Pls.' Mem. 20. In this limited regard, Plaintiffs are correct. In its liability decision, this Court, construing the 1910 deed from Adrian C. Honore to Seaboard Air Line Railway, held that the Trails Act blocked the abandonment of the railroad easement, and prevented the fee simple Plaintiffs would have obtained upon discontinuance of railroad use from reverting to Plaintiffs. Rogers, 101 Fed. Cl. at 294. Thus, the Court clarifies that in the before condition, JMC owned the land underlying the corridor in fee.

A plaintiff in a takings case cannot recover damages for lost access unless the plaintiff establishes that there was a reasonable probability that the property was "plainly adaptable" to such access, and that the proposed access would have been provided in the before taking scenario in the reasonably near future. Powelson, 319 U.S. at 275-76; Bd. of Cnty[.] Supervisors, 276 F.3d at 1366 (citation omitted). In the instant case, while the Legacy Trail separated JMC from Mission Valley after the taking, Plaintiffs failed to establish that access in the form of potential connection or joint development of these properties was reasonably probable in the before condition, that JMC was "plainly adaptable" for such access to Mission Valley or that there was a need for access from JMC to Mission Valley in the reasonably near future.

9

Plaintiffs contend the testimony of Messrs. Durrance and Dellos evinced "a history of discussions between the country club and a developer in which the JMC property was considered for residential development in conjunction with the adjoining country club land." Id. at 21. In denying JMC lost access damages, the Court considered the testimony of Messrs. Durrance and Dellos, but was not persuaded that access to Mission Valley was reasonably probable in the before condition based on the "potential for these owners or these properties . . . to connect, if so desired." Tr. 369 (Durrance). Plaintiff's expert, Mr. Durrance, testified that "there'[d] been discussion in the past about potentially" connecting the properties. Id. at 369-370. However, Mr. Dellos had no personal knowledge of such discussions. Id. at 170. Mr. Dellos testified:

> The only growth, residential growth that's going to take place [on the west side of the property where Mission Valley is located], because the east side of the course is totally developed, would be from the west and from the northwest. So it's important to us as that development takes place that it poses the potential for additional members for the country club. There was even some conversation, although I can't officially state it, that apparently one of the developers had talked about linking with Mission Valley.

Tr. 175. Messrs. Durrance and Dellos did not describe what such access would have entailed in the before condition.

The gravamen of Plaintiffs' claim for lost access damages was JMC's severance by the rails corridor from "native wooded lands, well maintained single family homes, and [a] golf course" on Mission Valley. PX 21B (BB-PLTF-13050); Pls.' Post-Trial Br. 38. The mere adjacency of JMC to Mission Valley does not equate to potential access or the right to severance damages. See United States v. Mattox, 375 F.2d 461, 463 (4th Cir. 1967) (recognizing that mere proximity or possibility of an integrated use of two separate tracts use will not confer upon the owner a right to severance damages without reasonable probability that the separate tracts could have been combined for such integrated use before the taking). Plaintiffs have not established a manifest error of law or mistake of fact warranting an award of lost access damages to JMC.

## Conclusion

Plaintiffs' motion to reconsider and amend the Opinion is **DENIED**.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**
